on the docket is Apex Oil Co. v. Arrowood Indemnity Co., No. 518-0396. Council ready? Yes, Your Honor. Okay, you may proceed. May it please the Court, good morning, Your Honor. My name is Allen Goldstein and I represent Apex Oil Co. The principle issue here this morning, Your Honor, is whether the Circuit Court erred in deciding that an underlying prone complaint against Apex fails to state a claim that potentially is covered by the Arrowwood policies. As Your Honors are well aware, an insurer may not justifiably refuse to defend an action against its insurer unless it's clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within or potentially within the policy's coverage. Your Honor, it's our position that it's far from clear that the allegations of the underlying complaint did not bring this case at least potentially within the coverage of the complaint. And if, as we submit, that's the case, Your Honor, then three things are true. Number one, Arrowwood reached its duty to defend Apex in the underlying prone action. Number two, because it provided no defense, did not offer to defend subject to reservation of rights, and did not bring a timely declaratory judgment action to determine its obligations under the policy, it's stopped from raising policy defenses to coverage now. And finally, the Circuit Court erred by granting summary judgment for Arrowwood. Indeed, it should have granted summary judgment for Apex on its breach of contract claim. Now, as Your Honors are well aware, when an issue of this type is posed, we compare policy language and the allegations of the underlying complaint. So let's start first with the insuring agreements. And they're all the same for every one of the policies that's at issue. And under coverage B, employer viability, which is the only coverage involved in the case, it states to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease. It goes on to state that the company shall defend against any such actions. Now, with regard to claims that fall within the realm of bodily injury by disease, there are certain time constraints. Those time constraints do not apply to claims that fall within the realm of bodily injury by accident. We've looked at the policy language. We now turn to the complaint. Arrowwood says Mr. Crone pleaded that he got mesothelioma, and therefore that's all there is. It's all about disease. That, in fact, is not the case. When you look at the complaint, although he pleads mesothelioma, that's not all that he pleads. In counts five and eight, he pleads unspecified bodily injury or harm. In counts four, six, and eight, he pleads that he was exposed to asbestos and, as a consequence, incurred asbestos-induced disease and conditions. Not just disease, but also conditions induced by asbestos. He doesn't explain what those conditions were. But if they were the same as disease, there would be no reason to plead them. So he's pleading some type of bodily injury that he's incurred from asbestos. The law says plainly that if there's any doubt about the nature of the allegations, they're to be liberally construed in favor of the insured. So we've got a complaint that pleads unspecified bodily injury and bodily harm and pleads asbestos-induced conditions. That provides a potential for a covered claim. It can't clearly be stated that there's no at least potentially covered claim. And, of course, under Illinois law, in order to have a potentially covered claim such that there's a duty to defend, we don't have to show that every claim in this 36-page complaint is potentially covered. We just have to show that some of these allegations, some theory, some part of it, is potentially covered, and we've done that. The basis for that position, Your Honors, is not simply the allegations in the complaint. We submit to you that our position that this complaint is potentially covered is consistent with Illinois precedent. And specifically, I point, Your Honors, to two Illinois Supreme Court cases. First, Zurich v. Raymark. And the significance of Zurich v. Raymark for purposes of this case is that the Illinois Supreme Court recognized the scientific fact that asbestos fibers likened to slivers of glass puncture lung tissue at or shortly after the time when they're inhaled. That is a sudden and violent event that causes bodily harm. It sounds to me like bodily injury by accident. In addition, Your Honors, I point you to Canadian Radium, a case which Arrowwood first brought to the Court's attention. In the Canadian Radium case, the Illinois Supreme Court was faced with the claim of a woman who had had her extremities diseased and damaged by exposure to radiation in her workplace. The significant fact is that her exposure and these harms that she suffered as a result of exposure to radiation didn't occur in an instant, like a broken ankle or a broken bone. No, they occurred over a several-month period. Yet the Illinois Supreme Court said this is injury by accident. So in other words, even when it didn't happen in an instant, it could still be by accident under Illinois law. In this case, so we've got a period of 30 years of exposure, as I recall. And so there's no way to determine when either the injury occurred. I mean, you've got a latency period with asbestos, right? And is that the thrust of your argument, basically, since the injury could have occurred from day one or during the period of coverage or 10 years after? Since you have, since there's no way to determine when the injury occurred, arguably, coverage should kick in. Yes, Your Honor, and that when we consider what the Supreme Court has said in Zurich versus Raymark, that there's bodily injury at or shortly after the asbestos fibers are inhaled, because that's what the Court said, scientific evidence established for it. So from our perspective, it can't clearly be said that this isn't at least a potentially covered claim. I guess, you know, commonly you hear that someone has been diagnosed with measles, you know, it's a death sentence. And it's, you know, to the common understanding, that's a disease. And so, but your argument is, well, because of these other accounts where it talks about, you know, I guess, ambiguous conditions that arguably coverage should take place. That's correct, Your Honor. Because the allegations have to be literally construed in favor of coverage. And when you look at the complaint, and he's pleading unspecified bodily injury in addition to mesothelioma, and he's pleading asbestos-induced conditions, he's pleading a basis that creates a potentially covered claim. If he were just talking about disease, there'd be no reason to talk about anything other than disease. And it fits nicely with Zurich v. Raymar and the Canadian rating case. There's an additional basis here, too, Your Honor. And that is that when you get into the distinction that the policy attempts to draw between bodily injury by accident and bodily injury by disease, it's, to say the least, murky. It's ambiguous. It starts off by saying the contraction of disease is not an accident within the meaning of the word accident in the term bodily injury by accident. But then it immediately says, and only such disease as results directly from a bodily injury by accident is included within the term bodily injury by accident. So it's not bodily injury by accident, but yes, it is. And the statement that the contraction of disease is not an accident within the meaning of the word accident actually isn't true, because they go on to state that disease can be bodily injury by accident. Well, obviously, that disease has to be contracted. So they've said the contraction of disease is not an accident, but then obviously it can be, because bodily injury by accident sometimes involves disease. And indeed, the last sentence of this, I'll call it in quotes a definition, because I really don't think it is a definition, the term bodily injury by disease includes only such disease as is not included within the term bodily injury by accident. So in other words, to determine bodily injury by disease, we're taking just those diseases that aren't diseases that fall within bodily injury by accident. I've been a coverage lawyer for more than 30 years. I'd have trouble parsing this language. But the standard isn't what can a coverage lawyer or what can a judge or what can an insurance expert determine language means in a policy. No, Illinois law says very clearly, we've got to state it clearly for purposes of the layperson's understanding. This isn't clear. And that's another basis for our position that the claim was potentially covered, because there's no clear distinction between bodily injury by accident and bodily injury by disease. They run together. It's not black and white. It's a mull. Now, Arrowwood says, well, you can't be right because other jurisdictions have gone the other way. They're talking about two jurisdictions, two out of 50. They're talking about Louisiana and Pennsylvania. And Louisiana is the state that's got the lead here because the Pennsylvania case,  comes from the Third Circuit interpreting what they think the Pennsylvania Supreme Court would say. They follow what Louisiana has done. And when we look at Louisiana law, which is the leader of this two-state authority that's contrary to the position we're taking, what we see is a 1974 Louisiana Supreme Court case, the Jennings case, which we cited to Your Honors, Jennings v. Louisiana and Southern Life, 290 Southern 2nd 811, in which the Louisiana Supreme Court found that silicosis is, in fact, a bodily injury by accident. And silicosis is very similar to an asbestos clump. So my point, Your Honors, is to the extent that we're looking at law from outside of the state of Illinois as persuasive authority, what they're citing to isn't persuasive because the state of Louisiana, the state that's supposed to be at the forefront of this authority that's contrary to what I'm submitting, submitting to Your Honors, has said that silicosis, an ailment that's very similar to an asbestos clump that comes from inhaling silica dust, is, in fact, a bodily injury. And so the state of Illinois, the state that's supposed to be at the forefront of this authority, has said that silicosis is, in fact, a bodily injury by accident. And the state of Louisiana, the state that's supposed to be at the forefront of this authority, has said that silicosis is, in fact, a bodily injury by accident. to go into court and file a declaratory judgment action to try to determine what its obligations were. That leaves us with an estoppel because when the claim is potentially covered and the insurance company doesn't defend it, they've repudiated the contract. And if they haven't taken the steps that I outlined, either offer the defense under reservation of rights or file a declaratory judgment complaint and ask a court to determine what its obligations are, if they haven't done that, then they've repudiated the contract and they're stopped from raising their policy defenses later on. What should happen in this case, Your Honors, is that summary judgment should be reversed. The case should be remanded. Summary judgment should be entered for APEX on its breach of contract claim because it's raised a potentially covered claim, and that demonstrates a breach of the duty to defend because it wasn't defended. And then there's a breach with regard to the indemnification component because, as I've pointed out, the failure to defend when there was a potentially covered claim creates an estoppel. With regard to the scope of the remand, the remand should be for purposes of determining what the damages are, including Section 155 penalties. And the reason I say that Section 155 penalties should be an issue for the circuit court to determine on remand is this. This matter was tendered to the insurance company in 2010. It was tendered under comprehensive general liability policies. But Illinois law says that when an insurer tenders a matter to its insurer for coverage, the insurance company's on notice of all policies that it's issued to that insurer. The insurance company denied coverage under those comprehensive general liability policies. It said nothing about the employer's liability coverage that's at stake here. One year later, in 2011, APEX specifically told the insurance company, this tender is under the workers' comp and employer's liability policies too. And that's plainly showed in the record. And it's acknowledged that the e-mail by which that statement was made was received by the insurance company. So in 2011, they also know, because the insurer has expressly told them, this is encompassed by these employers' liability coverage policies too. They still don't do anything. Not until APEX in 2012 files its complaint in the circuit court does the insurance company then counterclaim for declaratory relief. The law is very clear that when an insurance company causes an insured to unnecessarily have to take steps to vindicate its contract rights, when that insurance company delays, and as a consequence, the insured has to file a lawsuit, that that can be a basis for Section 155 insurance sanctions. And that's, Your Honor, why I submit that the scope of the remand should also include the issue of whether Section 155 sanctions are appropriate. Finally, Your Honors, I would briefly touch on the issue of waiver. Arrowwood says that APEX has waived its claim, that there's a potentially covered claim. I frankly think that's something that should be dismissed summarily. All one needs to do is look at the underlying complaint that APEX filed, the complaint that APEX filed in the circuit court. In paragraph 17 through 23, it's plainly stated that APEX is suing its insurance company under this insuring agreement because it breached its duty to defend and breached its duty to indemnify. We're talking now about the same insurance language that fits neatly on one page. So the notion that somehow APEX waived this issue because it is arguing it now in a slightly different manner than it argued it below is of no consequence. The key case on this point, which we cited to the court and which Arrowwood ignored, is Lakeshore v. Deutsche Bank, in which the Illinois Supreme Court very plainly stated what you have to preserve in order to present it on appeal are issues, not arguments. You don't have to argue the exact same way in the circuit court and in the appellate court. What you need to do is present the same issue, and that's what we've done, because the issue is whether there's a potentially covered claim within the scope of this insuring agreement, and if there is, whether then the insurance company's stopped because it breached its duty to defend and didn't take the proper steps to determine what its obligations were. Thank you, Your Honor. Thank you, Counsel. Good morning, Your Honors. My name is Anne Murray for Pelley Arrowwood Indemnity Company. I had an outline that I wanted to talk about, but I think I'd be remiss if I didn't raise a threshold issue here before the Court. You've heard this morning the arguments about why the Crone complaint alleged bodily injury by accident under the workers' comp employers' liability policies, but this is the first time that that argument has been raised in this case. I think we need to step back and talk about all the opportunities that Apex had to argue that argument in the underlying case. Before I do that, I'm going to discuss the summary judgment decision that we think should be affirmed in all respects, and I'm going to discuss the two grounds on which Judge Mudge issued summary judgment. Those grounds were based upon the language of the policy. The language of the policy includes two coverage problems, bodily injury by accident and bodily injury by disease, as Mr. Goldstein stated. Apex never disputed and, in fact, acknowledged on oral argument in summary judgment that the Crone complaint involved a bodily injury by disease. Now, the reason why they didn't dispute that is because they argued throughout the course of five years of litigation that those policy provisions, any policy provisions, for that matter, are meaningless, because you don't get to go there at Arrowwood, you don't get to rely on those provisions because you were stopped, because you didn't defend the underlying Crone action, nor did you file a declaratory judgment action. So Apex's counsel in the underlying proceedings before Judge Mudge said, those policy provisions, any policy provisions, are immaterial and false issues because I don't need to discuss them, and I won't discuss them, Apex's counsel stated on oral argument, because I don't need to because Arrowwood is stopped and cannot rely on those provisions. So Apex's counsel represented to Judge Mudge that the only issue before the court throughout the entirety of the proceedings is the question of whether Arrowwood is stopped, because it didn't defend upon tender of the complaint, nor did it file a declaratory judgment action. And there were, I litigated the case for five years, there were at least seven or eight opportunities when Apex and pleadings could have raised the issue of bodily injury by disease. That the Crone complaint alleged bodily injury by accident. They did not. In the complaint, Mr. Goldstein is correct that they argue that, or they claim that Arrowwood owed a duty to defend based upon the policy. Of course, they claimed that. It's an insurance policy, these are workers' comp, employers' liability policies, they had to plead the existence of a policy and policy provisions within that policy. But never once were the words bodily injury by accident or the fact that Arrowwood had a duty to defend because of bodily injury by accident being pled were ever uttered for five years in the underlying proceedings. In response to the D.J. complaint that was filed, the declaratory judgment complaint that was filed, Arrowwood asserted a counterclaim. The counterclaim alleged that the last exposure and the 36-month provisions, which I'll get into shortly, applied to preclude a duty to defend and to indemnify. In response to that counterclaim, Apex asserted two defenses, waiver and estoppel. It never raised the fact that, or the argument that they're raising on appeal here for the first time, that a duty to defend was triggered because something, because bodily injury by accident. was pled in the Chrome complaint. In summary judgment, Apex filed a very brief summary judgment motion and argued very broadly that under general duty to defend case law, that the duty to defend was triggered under the policy. And that, therefore, because Arrowwood didn't defend under the reservation rights or file a declaratory judgment action, that Arrowwood was estopped and couldn't rely on the policy provisions. On reply, Apex argued the same. And again, an oral argument before Judge Mudge. So the issue before the court, before Judge Mudge in the underlying action, had nothing to do with whether bodily injury by accident had been pled. So to say that the court erred in its application of the provisions of the policy is not only unfair to Arrowwood, who had never had an opportunity to meaningfully respond to that argument in the trial. But it's unjust, because if the argument is that the underlying court erred in its application of the provisions, when those provisions were never presented to the underlying court, that's the whole reason why we have the waiver rule. Well, counsel, I don't know, if I understand opposing counsel's argument, the Silas Lakeshore versus Deutsche Bank case, saying, well, maybe we didn't use the same words, but we made the argument, what's your response to that? Well, excuse me, Apex states that Arrowwood didn't raise or didn't cite that 2015 decision. We cited the Daniels case and the Guy's case, which were also from the Supreme Court of Illinois. And frankly, I wish we had cited it, because it supports Arrowwood's position. In fact, not mentioned by Apex in its reply brief or in oral argument today, there's a quote from that case that says, issues not raised on appeal, are not subject to appeal. Issues not raised below are forfeited, meaning issues not raised below are forfeited, excuse me. And the purpose of the court's forfeiture rules, according to the Supreme Court, is to encourage parties to raise issues in the trial court, thus ensuring that both the trial court is given an opportunity to correct any errors prior to appeal, and that a party does not obtain reversal through his or her inaction. And we would submit that not only was it inaction per se, it was a tactical trial strategy by Apex in the underlying case to choose a course of estoppel, to argue only estoppel throughout the entirety of the proceedings. In every opportunity I counted them, there were about seven or eight opportunities in filed pleadings that Apex could have argued that the underlying allegations of the chronic complaint alleged bodily injury by accident. They chose not to. They chose instead to argue that Arrowwood is estopped. You don't need to look at the provisions of Judge Mudge, so don't look at them, because they're immaterial, they're false issues, and they don't need to be looked at. So Judge Mudge addressed what was before him, the estoppel argument. Now, let me explain to you that when we were before Judge Mudge again at oral argument, and I was in the trial court, and we had oral argument. And when I was arguing that motion, I stated to the court that the parties do not dispute that the only prong of the coverage agreement that's pled is bodily injury by disease, and for good reason. And by the way, Apex's counsel did not object to it. Again, stated it was immaterial. No dispute that we were talking about bodily injury by disease. In fact, Judge Mudge included that in his decision in the underlying summary judgment decision. And there was good reason for that, because the allegations of the complaint pled that Mr. Crone suffered from mesothelioma and all the injurious conditions that come with it. Apex makes a big point of saying that, well, there are these unspecified injurious conditions. All Mr. Crone was doing, or his estate for that matter, was pleading that he suffered all of the conditions and the contraction of disease that comes with a diagnosis of mesothelioma. So the injurious conditions are not unspecified bodily injury. They are the conditions themselves, the symptoms themselves that come with pleading a claim of mesothelioma. As a practical matter, the nature of mesothelioma, someone's been exposed to asbestos for 30-plus years, and then they're diagnosed with mesothelioma years later. When would there ever be coverage? I mean, you've got this exclusion on a time period, and I understand there's different policies that are in place over the years. But, you know, I'm just curious, when would there ever be coverage because of the nature of mesothelioma? I mean, you've got this exclusion on a time period, and I understand there's different policies that are in place over the years.   But, you know, I'm just curious, when would there ever be coverage because of the nature of mesothelioma? So the workers' comp – remember, these are workers' comp employer's liability policies. And they answer that question. They say that for purposes of an occupational disease, such as what was pled here by Mr. Crone's estate, where disease is contracted through exposure, there's no dispute that Mr. Crone alleges that he's suffering exposure to asbestos fibers that got him sick, suffering injurious conditions. And that's what Mr. Crone alleged, or his estate. But what the policies say is that we will provide coverage when the last date of the last exposure to those conditions that caused that disease happens during the policy period. So if Mr. Crone had alleged, which he didn't, but if he had alleged that he was employed from 1957 to 1982, which was the last year in which the royal policy, the Arrowwood policy, I use that term interchangeably, it's formally known as royal, when the Arrowwood policy was issued, if he had alleged 1957 to 1982, then that 1982 policy provides the coverage. That's how it works. And it provides the coverage so long as there's a claim or suit that's filed against the insured within 36 months. That's the 36-month provision. Really, this is all about the wrong policy was tendered. It was tendered under the wrong policy. This was an exposure period from 1957 to 1996. There should have been either a tender in 1996 or a tender at some later point, but it certainly shouldn't have been about a 1996 policy. It should have been about a 1982 policy that had expired 14 years after, before the last date of exposure, and at least 25 years before the underlying suit was filed. These policies were long closed and shut down. Now, I can't speculate why there wasn't a policy or there wasn't a tender under a later policy, but certainly the 1982 policy is not the policy that operates, or any policy before that for that matter. So the policies themselves answer that question. So they've waived the argument. Oh, and I'm sorry, Your Honor, bodily injury by disease. That's under the bodily injury by disease problem. But we've argued in our papers that they've waived it. They chose a tactical trial strategy that advanced only the establishment argument, not the actual argument. And so we think it's waived and it should not be considered, and APEX forfeited those arguments. But even if it's considered, it fails in any event, because it distorts the policy language, it ignores Illinois rules of construction, because APEX's reading of the language creates surpluses in the policy. It basically says that any disease that's caused by exposure to a disease is not a disease. That exposure is accidental, and therefore all disease is accidental. No one intends to be diseased. Nobody intentionally contracts a disease. So if all disease is considered an accident, then there's no reason to have bodily injury by disease problem within the insuring agreement. There's no reason to have the last exposure provision. There's no reason to have the 36-month suit limitation. All those terms are rendered surplusage, because if you consider any disease, including the disease and the contraction of that disease and the injurious conditions from exposure that were pled in the prone complaint as merely an accident, then nothing remains to fall within the bodily injury by disease problem. And so the construction that APEX advances would render that portion of the policy language invalid. It would render it meaningless, and you can't have a construction that renders terms meaningless. Well, in essence, they tend to argue it's both, right? Accident and disease. That's basically what I heard, is argument. And you're saying, well, that's weight. What I'm saying is that they're mutually exclusive terms. Remember, these are workers' comp. employee liability policies, and they provide coverage for bodily injury by accident, and they're mutually exclusive. And bodily injury by disease. Bodily injury by accident. These are workplace accidents. These are workers' compensation employers' liability policies. And it contemplates both accidents and occupational disease. And when there's an accident, that's easy. The policy that's on the risk at the time of the accident, which is in workers' comp. parlance, which is what's imported into the policies, means something discreet in time, place, and cost. So that's easy. If an accident happens on the job, it's a discreet event in time, place, and cost. This is a workers' comp. employer's liability policy, after all, so it deals with those types of workplace accidents. And then you have the occupational disease claims, which, as Your Honor acknowledged before, it's hard to place time, place, and cost on an exposure claim. So that's why the policy also provides coverage for the occupational disease claims and ties the policy on the risk at the last date of last exposure. It makes it, it pinpoints it to that policy period. So it's either one or the other. Now, the contraction of disease, via that exposure, the policy answers that question, too. It says it's not bodily injury by accident, it's bodily injury by disease. And because contraction of disease, which is exactly what Mr. Crone, Mr. Crone, alleged, he alleged he contracted disease and all the injurious conditions that come with mesothelioma. The injurious conditions that APEC says is some separate, undisclosed accident, bodily injury workplace accident, were not. The injurious conditions were asbestos induced from his exposure. And when you have an exposure claim, the policy is very clear that an exposure claim involving the contraction of disease is bodily injury by disease, subject to both 36-month provisions and the last exposure provisions. So it can't be both, Your Honor. It's either a workplace accident or a bodily injury by disease by exposure. And there's no dispute here that the Crone complaint involved an exposure to asbestos. No dispute on that. And that's how the policy looks at it. That's how workers' compensation law looks at it. Workplace accident is a discrete accident, and time, place, and cause. That's the first term. Well, mesothelioma can only be caused by asbestos exposure. Well, and that's why, in pleading that complaint, Mr. Crone pled exposure. And that's what the policy contemplated, that if that exposure, the last date of that exposure was in 1982, there would have been coverage under that policy for any claim or suit brought within three years, which was generally tied to statutes of limitations from that. So he pleads exposure to asbestos, resulting in these injurious conditions in his body, which happens upon impact of asbestos fibers on the lungs, culminating in disease. He pled the contraction of disease, which the policy plainly states, if you look at the policy form, the disease. That's all that's going on here in the Crone complaint. He's pleading the disease process. He's pleading he was exposed to fibers. He's pleading that he had he got sick, injurious conditions. And he's pleading that he contracted mesothelioma. It's the contraction of the disease, the disease process. That's what we're dealing with. And because of that, APEC's never disputed that the allegations of the complaint involved solely in mesothelioma. It was a bodily injury by disease. But because of the estoppel argument that it only advanced, it never dealt with them on a substantive level and said that they were false issues and immaterial because the estoppel argument that APEC's advanced trumped everything, trumped a consideration of even the bodily injury by accident problem. And that was never before judgment. I'd like to point out a few issues on the Zurich case that has been mentioned by APEC in its papers and today in oral argument. The Zurich case, Your Honor, was an asbestos bodily injury case involving comprehensive general liability policies. Comprehensive general liability policies have entirely different language from employers' liability and workers' comp policies, has entirely different definitions of the word bodily injury. Bodily injury under comprehensive general liability policy is defined as bodily injury, sickness and disease. And because of that definition, the court in Zurich was tasked with determining when bodily injury happens. It never determined whether an asbestos injury can be considered a bodily injury by employers' liability policy. It simply had nothing to do with that. It was only looking at whether bodily injury under the specific definition of a comprehensive general liability policy was pled when it happened and which comprehensive general liability insurers needed to respond. So the application of Zurich to a workers' comp employers' liability policy simply fails, because the workers' comp employers' liability policies at issue here specifically tell us that when you have contraction of disease by exposure, that's bodily injury by disease. Your Honors, let me speak briefly to some of the points that Ms. Murray has raised. First, let's talk about waivers. Ms. Murray said more than once that the only question, the only issue that was brought up by Apex below was estoppel. I'm reading from the transcript of the argument below, and this is what Mr. Knapp, who was counsel for Apex, said. So what we have here is we have a lawsuit against the Royals insured alleging bodily injury due to asbestos exposure while in their case, the case law does not require a certainty of coverage, not even a probability of coverage. A mere possibility of coverage triggers the duty to defend. And the case law says all doubts regarding coverage must be resolved in favor of coverage, in favor of the insured. The law in Illinois could not be clearer on these points. So there's no doubt that Mr. Knapp, who was counsel below, and the reference to Royal was Erwin's predecessor. There's no doubt that Mr. Knapp, who was saying this is a duty to defend case, because when you look at the insured agreement, there's a potential for a covered claim. So the notion that he did not raise below, the issue that we're articulating to you now, has no support. The issue in the case is whether there's a potentially covered claim under an insuring agreement that is about as wide as the space I'm showing you. It's a few sentences. So plainly, the point was raised below and it's been preserved. And it's also set forth in the complaint below, which states, among other things, the chrome suit was within the coverage provisions of the aforementioned policies. He doesn't have to plead the exact wording of the policy language that he's pointing to. He's relying upon the insuring agreement and saying, you've got a potentially covered claim here. You should have defended it. That certainly doesn't create some injustice for the circuit court judge who's looking at that insuring agreement and whose obligation is to decide, based upon the insuring agreement and the allegations of the underlying chrome complaint, all right, is this covered or not? And are we submit to you, Your Honor, is that the circuit court erred on that? Now, Ms. Murray says this is the wrong policy. It's not the wrong policy. It's the right policy. It's an employer's liability policy. And keep in mind that multiple times Ms. Murray said to you, she used the reference occupational disease. Look in the policy, Your Honors. It's one page. The term occupational disease appears only in the workers' comp portion. It does not appear in the employers' liability portion. The employers' liability portion deals with the word disease. My point is that workers' comp and employers' liability are not the same thing. The policy explicitly states that employers' liability does not cover items that are covered by workers' comp. If the coverages were the same, we wouldn't need to have both of them. Now, with regard to the employers' liability portion, it does not appear in the employers' liability portion. The notion that every disease now will be treated as an accident, such that we're excising from the policy important language, that really is a sky is falling argument. Because we're talking about one complaint here. One complaint, the Crone complaint. And in the Crone complaint, he doesn't just plead that he contracted mesothelioma. He pleads that he suffered asbestos-induced conditions. He doesn't say what those are. But they have to be liberally construed in favor of coverage. And in 36 pages, he also alludes to unspecified bodily injuries. So the notion that this is just about mesothelioma doesn't square with the allegations of the complaint. We can't guess what was in his mind. We've got to look at what's in the complaint and say to ourselves, is this potentially covered? And if, in fact, they had provided a defense, and they could have done it subject to a reservation of rights, all that would have happened, all they would have conceded was that Apex gets a defense. They would not have sacrificed their ability to argue that it wasn't actually covered. You know, we would disagree with them. But my point is that when they talk about these draconian scenarios that are coming about because of the appeal that we're advocating, it misses the point badly. Their obligation was just provide a defense. Just provide a defense, Your Honor. Thank you, Counsel, for your arguments. The Court will take this matter under advisement under decision of the courts.